717 A.2d 514

**Walter KILGORE and Patricia Kilgore, Appellants,**

**v.**

**CITY OF PHILADELPHIA, City of Philadelphia, Division of Aviation, and the King Interests Corporation and Summit Airlines, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1997.

Decided Aug. 21, 1998.

Dale G. Larrimore, Philadelphia, for Walter and Patricia, Kilgore.

K. Reed Haywood, J. Bruce McKissock, Philadelphia, for City of Philadelphia.

Byron L. Milner, Philadelphia, for King Interests Corp.

John Dragani, Philadelphia, for J. Paolino & Sons.

Maura K. Nolan, Plymouth Meeting, for William A. Coyle, M.D.

Barbara Pennell, Nancy E. Mancheski, Philadelphia, for Colanaro Contracting Co.

Robert G. Devine, Philadelphia, for Philip Maurer, M.D. and E.M.A.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

NIGRO, Justice.

This case presents the question of whether the City of Philadelphia is immune from liability under the Political Subdivision Tort Claims Act ("the Act"), 42 Pa.C.S. §§ 8541–8564.

Appellant, Walter Kilgore ("Kilgore"), an employee of Federal Express, was injured while working at Philadelphia International Airport. The accident occurred as Kilgore was standing by a motorized tug attached to a cargo dolly on an airport roadway. Specifically, Kilgore and a co-worker, Mark Newell, were attempting to hitch a cargo dolly to the motorized tug when Newell allegedly lost control of the tug due to an accumulation of ice and snow on the roadway from an earlier snow storm. As a result, the tug struck Kilgore and crushed his right foot.

Kilgore filed a complaint against the City of Philadelphia ("City"), King Interests Corporation and Summit Airlines. With regard to their claim against the City, the Kilgores allege the City failed to remove ice and snow from the area

where the accident occurred.[1] In its answer, the City asserted a defense of governmental immunity under the Act.

The trial court granted the City's motion for summary judgment and dismissed Kilgore's complaint against the City. In an unpublished decision, the Commonwealth Court affirmed with Senior Judge Della Porta dissenting. This Court finds summary judgment was improperly awarded as there exists a genuine issue of material fact as to whether the City was negligent under the real property exception of the Act, and, therefore, we reverse.

An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of material fact. Further, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 134–35, 589 A.2d 205, 206 (1991). Additionally, in reviewing a trial court's grant of summary judgment, an appellate court may disturb the order only where there has been an error of law or an abuse of discretion. *Cooper v. Delaware Valley Medical Center*, 539 Pa. 620, 632, 654 A.2d 547, 553 (1995).

The doctrines of governmental immunity and sovereign immunity were abolished by this Court's decisions in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) and *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). In response to those decisions, the Legislature enacted the Political Subdivision Tort Claims Act and the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8528, thereby raising the shield of governmental immunity.[2]

1. While the parties disagree as to whether the City was actually responsible for snow removal from the roadway in question, the trial court found that the City owned the roadway in question and was responsible for clearing it of accumulated ice and snow.

2. Statutes dealing with governmental and sovereign immunity are to be interpreted consistently, as they deal with indistinguishable subject

The Political Subdivision Tort Claims Act provides that liability may be imposed against a municipality if two conditions are satisfied and if the injury occurs as a result of one of eight enumerated acts. 42 Pa.C.S. § 8542(b). The two threshold conditions are that (1) the damages would be otherwise recoverable under common law or by statute creating a cause of action against one not having an immunity defense, and (2) the injury must be caused by the negligent act(s) of the local agency or its employee acting within the scope of its office or duties, not including acts of crime, fraud or malice. 42 Pa.C.S. §§ 8542(b)(1) and (2).

Since the enactment of the immunity statutes, we have decided a variety of cases which are instructive in the instant matter. In *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), this Court examined whether liability attached to the City of Philadelphia under the real estate exception to governmental immunity, 42 Pa.C.S. § 8542(b)(3). Specifically, in *Mascaro*, an action was brought against the City of Philadelphia for injuries inflicted on a family by a detainee who escaped from the juvenile detention center due to allegedly negligent maintenance of the center. This Court found the City could not be held liable where the dangerous condition of the property merely facilitated an injury caused by the act of a third party which occurred far from the government property.

In *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), this Court again addressed the real property exception in the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4).[3] In that case, plaintiff claimed the Commonwealth was negligent in failing to warn of a dangerous condition, a privately owned

matter. *Finn v. City of Philadelphia*, 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995); *Kiley v. City of Philadelphia*, 537 Pa. 502, 507, 645 A.2d 184, 186 (1994); *Crowell v. City of Philadelphia*, 531 Pa. 400, 410 n. 8, 613 A.2d 1178, 1182 n. 8 (1992).

3. 42 Pa.C.S. § 8522(b)(4) in relevant part provides: "A dangerous condition of the Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons ..."

strip mine, contiguous to the Commonwealth property. In analyzing the real property exception of the Act, we emphasized that for limited waiver of immunity to apply, there must be negligence which makes the real property unsafe for activities for which it is used. *Snyder* at 434, 562 A.2d at 312. Finding that the alleged dangerous condition of the strip mine was some distance from the Commonwealth's right-of-way, this Court held in *Snyder* that the artificial condition or defect had to be in the land the Commonwealth maintained to bring it within the real estate exception to sovereign immunity. *Id.*

While *Mascaro* and *Snyder* examined governmental liability under the real estate exceptions where a third party precipitated the injury, neither case extinguished all governmental liability as a joint tortfeasor responsible for acts of others which merely facilitate an accident. In fact, this Court has found that a government agency could be held liable where there were affirmative acts of negligence on the part of employees of that agency. *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992).

The *Crowell* case involved a wrongful death action brought against a driver and the City of Philadelphia alleging that the parties were jointly liable for the death of plaintiffs' son in an automobile accident. The defendant driver followed a misplaced directional arrow and crossed into the son's traffic lane, colliding with the son's vehicle.[4] At the time of the accident, the defendant driver was intoxicated and later pled guilty to driving while intoxicated. A jury found that the City's negligence in misplacing the directional sign was a substantial factor in causing the accident and apportioned the damages 80% to the driver and 20% to the City.[5] The Commonwealth Court reversed the jury's award, finding that under the governmental immunity statute, 42 Pa.C.S. § 8542,

**4.** It is important to note that the plaintiffs did not allege that the real estate or traffic sign under the control of the local agency was itself defective. Rather, the plaintiffs' claim was based upon the negligent placement/maintenance of the sign by City employees.

**5.** The question of concurrent causation is normally one for the jury. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 254, 465 A.2d 1231, 1238 (1983).

a municipality could never be liable for any injury caused jointly with another tortfeasor. This Court reversed, affirming the principle of joint liability by concurrent causes in the context of the governmental immunity statute. Further, we emphasized that the jury found by its verdict that the City's action did not merely facilitate the plaintiffs' injuries but was, in fact, a substantial contributing cause, with the liability being joint as opposed to vicarious. *Id.* at 406, 613 A.2d at 1181. We ultimately held:

> (T)he jury found that the actions of the City's employee were a substantial contributing cause of the action. Thus, since the basis of the jury's verdict was the active negligence of the City's employee misplacing the directional sign, and not merely the City's status along the chain of causation, the verdict against the City was proper. . . .

*Id.* at 413, 613 A.2d at 1184.

In the case *sub judice*, the Kilgores claim damages for injuries caused by the negligence of the City in the manner in which it maintained its property. They claim that the City breached its obligation to remove snow and ice from the roadway area. Under the facts as alleged, the Kilgores meet the two threshold conditions to bring an action under the Act since, under common law, they could recover if Mr. Kilgore had fallen on private property, and it is alleged that the City's active negligence was a direct cause of this accident. *See* 42 Pa.C.S. §§ 8542(b)(1) and (2). Additionally, it is alleged that the City's failure to remove ice and snow following an earlier storm was related to the "care, custody and control of real property in possession of the local agency", 42 Pa.C.S. § 8542(b)(3), and was a direct cause of the accident. Thus, the Kilgores satisfy the requirement that the injury occur as a result of one of the eight enumerated acts in 42 Pa.C.S. § 8542(b).

The *Crowell* decision clarified that governmental agencies can be found responsible as concurrent joint tortfeasors regardless of how many other tortfeasors contributed to the injury. Here, as in *Crowell*, it is alleged that the dangerous

condition was created through the negligence of City employees, not by third parties who were merely acting on City property. The allegations that the negligent actions of the City employees made the airport roadway unsafe are analogous with the allegations that the negligent placement of the road sign made the road unsafe in *Crowell*. Further, this Court has consistently held that the question of whether a dangerous condition exists on real property in possession of a local government is a question of fact for the jury. *Bendas v. Township of White Deer*, 531 Pa. 180, 185, 611 A.2d 1184, 1187 (1992).

Taking Appellants' allegations of fact in the most favorable light as the non-moving party, there exists a genuine issue of material fact as to whether the City was negligent in the care, custody or control of real property in its possession, in allegedly failing to remove a dangerous condition, accumulated snow and ice from the roadway.[6]

Accordingly, the order of the Commonwealth Court is reversed and this case is remanded to the Court of Common Pleas of Philadelphia County for further proceedings consistent with this opinion.

NEWMAN, J., did not participate in the consideration or decision of this case.

CASTILLE, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

CASTILLE, Justice, dissenting.

Although *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), was decided less than four years ago, the

---

6. While the dissent relies upon *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), that case involved the sidewalk exception to governmental immunity not the real estate exception at issue in this case. The Court recently acknowledged this distinction in *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997). Although this Court has previously stated that the real estate and sidewalk exceptions to governmental and sovereign immunity should be interpreted consistently, the plain language chosen by the legislature cannot be ignored in doing so. Here, as in *Grieff*, the plaintiffs' claim falls squarely within the real estate exception.

majority has *sub silentio* overruled it, and in so doing, has abandoned the principle of *stare decisis.* As I believe that we are constrained to adhere to the holding of *Finn* under the principle of *stare decisis,* I respectfully dissent.

The facts of this case, as recounted by the majority, demonstrate that appellant Walter Kilgore ("Kilgore"), an employee of Federal Express, was injured while working at the Philadelphia International Airport. The accident occurred as Kilgore was standing by a motorized tug on an airport roadway. Kilgore and a co-worker, Mark Newell, were attempting to hitch a cargo dolly to the motorized tug when Newell allegedly lost control of the tug due to an accumulation of ice and snow on the roadway from an earlier snow storm. As a result, the tug struck Kilgore and crushed his right foot.

Kilgore filed suit against appellees seeking damages under the third statutory exception to the general rule that the City is immune from suit for the negligent acts of its agents. The relevant exception provides

§ 8542. **Exceptions to governmental immunity**

(b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency

. . . .

(3) **Real Property.**—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

Although this statutory exception to governmental immunity is not identical to the exception at issue in *Finn,* this Court has held that the "sidewalks" exception at issue in *Finn* (§ 8542(b)(7)) must be interpreted consistently with the exception at issue here, and that each requires a showing that an "artificial condition or defect **of the land itself** caused an injury" in order for the exception to apply. *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 506–07, 645 A.2d 184, 186

(1994) (emphasis added). In *Finn,* the plaintiff had been walking on a sidewalk adjacent to city-owned property in Philadelphia when she slipped on an accumulation of grease. The plaintiff argued to this Court that because the accumulation of the grease constituted a dangerous condition "of the sidewalk" under § 8542(b)(7), an exception to the general rule of governmental immunity applied. *Finn, supra,* 541 Pa. at 599, 664 A.2d at 1343. The City argued that in order to pierce its shield of governmental immunity, a claim involving government property must establish that an actionable dangerous condition of government property derives or originates from the property in question and may not arise from a source outside the property. Because grease does not derive or originate from the sidewalk itself, the City argued that it is not a defect "of the sidewalk" and thus that the plaintiff's injury was not encompassed by the relevant exception.

This Court began its analysis by paying heed to the axiom that exceptions to immunity must be strictly construed. *Id.* at 601, 664 A.2d at 1344 (citing *Snyder v. Harmon,* 522 Pa. 424, 434, 562 A.2d 307, 311 (1989); *Mascaro v. Youth Study Center,* 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987); *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 506, 645 A.2d 184, 185–86 (1994)). With that axiom in mind, the Court resolved the underlying legal dispute:

> What is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the sidewalk itself. Such proof might include an improperly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk. Here, however, we have no such allegation or proof.... In the language of the statutory exception to governmental immunity, the dangerous condition was **on the sidewalk, not of the sidewalk, and thus is insufficient to create liability in the city.**

*Id.* at 605, 664 A.2d at 1346 (emphasis added). The fact that City personnel knew or should have known of the dangerous condition, alluded to by the dissent, did not affect the Court's interpretation of the immunity statute. *Id.* at 606, 664 A.2d at 1347 (Cappy, J., dissenting).

The instant case clearly is controlled by *Finn*. As in *Finn*, appellants here have failed to allege any defect of the real property itself. Appellants do not claim that the roadway at issue was designed in a manner which caused an unnatural amount of ice and snow to accumulate on it – a claim which arguably would not be barred by *Finn*. Rather, appellants have alleged that the City was negligent in failing to clear an accumulation of ice and snow *from* the roadway. The claim that this Court rejected in *Finn* – where the City had knowingly failed to remove an unsafe accumulation of grease *from* the sidewalk – is materially indistinguishable from the claim to which this Court lends its judicial imprimatur today. Since we have consistently held that the statutory exception at issue in *Finn* must be interpreted consistently with the statutory exception at issue here, *Kiley, supra*, appellant's claim is barred under the authority of *Finn*. The Court fails to acknowledge this reality, much less explain or justify its departure. It would behoove the Court to recall the late Supreme Court Justice James T. McDermott's sound admonition regarding the judicial construction of immunity statutes:

> The judicial concept that where there is a wrong there must be a right often depends on the wisdom and large responsibility of the legislature. What rights for what wrongs are generally their prerogative and apportioned in the exercise of their many responsibilities and competing needs. Their task, like ours, is never easy. However, it is our duty to respect and enforce their judgment, even with heavy hearts in particular instances.

*Love v. City of Philadelphia*, 518 Pa. 370, 375–76, 543 A.2d 531, 533 (1988) (McDermott, J., dissenting). Today, this Court inexcusably neglects the duty, by which it stood in *Finn*, to respect and enforce the judgment of the legislature. I respectfully but emphatically dissent.

FLAHERTY, C.J., joins this dissenting opinion.